ST. L., I. M. & S. R'Y CO. v. LEDBETTER, AD'M.

1. RAILROADS: *Negligence: Injury to one unlawfully on car.*
   When one voluntarily and without right gets upon a freight car to ride, he is a mere intruder and trespasser, and the company owes him no duty except the negative duty not to injure him wantonly or wilfully, or by such gross and reckless negligence in the management of the car, after he is discovered on it, as would be equivalent to intentional mischief. And even if the engineer knows of his being upon the car, and is negligent in his management of it, the company is not liable for an injury to him which could not be foreseen as a probable consequence.

APPEAL from *Poinsett* Circuit Court.
Hon. J. G. FRIERSON, Circuit Judge.

*Dodge & Johnson* for Appellant.

Appellee's intestate was unlawfully upon the car of the company; he had no right to be there, and was a mere intruder, a *trespasser*, to whom the railway company owed no duty whatever; and it was not liable even for the negligence of its servants, until he was known to be there, and *afterwards* the company's servants were guilty of such gross negligence as amounts to wilful and intentional mischief, or wantonly and maliciously injured him. *Sher. & Red. on Neg., Sec. 264; 2 Am. & Eng. R'y Cases, 3; 2 Id., 6; 18 Id., 171; 51 Com., 143; 31 P. F. S., 366; 12 Harris, 465; 125 Mass., 79; 126 Ib., 380; 12 A. & E. R'y Cases, 80; 8 Id., 547; 4 Id., 536; 6 C. L. J., 229; 65 Mo.,*

St. L., I. M. & S. R'y Co. v. Ledbetter, Ad'm.

22; *1 Thomp. on Neg., pp. 443–449; 21 Minn., 393; 49 Ind., 93.*

Jones was clearly guilty of contributory negligence, even of recklessness, which was the proximate cause of his death. *36 Ark., 46; Ib., 50; Ib., 376; 40 Ib., 322; 41 Ib., 549; 83 Mass., 190.*

The recognized rule of law is that "a person who had no lawful right to be upon a railway car, or any other vehicle, and is there without the consent of the carrier, cannot recover damages for anything short of *gross negligence* on the part of the carrier, occurring after the latter has had notice of such person's presence on the vehicle." See authorities *supra.*

While the mere fact of a man being a trespasser does not deprive him of all rights, nevertheless, the railway company, upon whose property he is trespassing, are not, of course, bound to exercise any care or diligence for his safety. They will only be responsible for any *intentional* or *wanton* injury done such trespasser. *17 Hun., 74; 64 N. Y., 129; 62 Ind., 301; 26 Ind., 76; 59 Pa. St., 129; 44 Ib., 357; 87 Ib., 405; 72 Ill., 222.*

*J. E. Riddick* for Appellee.

Reviews the evidence in detail, and contends that the presence of Jones on the car was known to the company's employes; that his presence being thus known the company's servants were guilty of such *gross negligence*, if not *wilful, intentional* and *wanton*, as to render the railroad liable, even if Jones was unlawfully on the car, and a trespasser. Citing, *45 Iowa, 29; 64 Mo., 430; 13 Mo. App., 352; Ib., 589; 14 Ib., 465; 50 Mo., 461; 36 Md., 366; 45 Iowa, 29; Wharton on Neg., 3 ed., Sec. 323 et seq; 45 Mo., 255; 35 N. Y., 9; 29 Id., 390; 40 Barb., 550.*

Railway companies must use reasonable care to prevent the injury of persons or property on or near their line, *whether*

wrongfully there or not, and this care must be greatest .where human life is involved. *36 Ark., 41, 376; 42 Id., 322; 75 Mo., 149; 64 Mo., 437*, and cases *supra*.

Even if Jones was guilty of the grossest negligence, yet if the railway company, after the discovery of his negligence, by the use of ordinary care could have averted the injury and failed to do so, it is liable. *Wharton on Neg., 323 et seq; 45 Mo., 255; 35 N. Y., 9; 25 Id., 390; 40 Barb., 550, etc.* The failure of appellee's employes to exercise this ordinary care was the direct and proximate cause of Jones' death.

The facts.        SMITH, J. Frank Jones was in the employment of a contractor for building bridges on a branch road, which the defendant company was constructing, in the year 1882, from Knobel down Crowley's Ridge in the direction of Forrest City. His office was at Knobel and his principal duties were to receive consignments of timber and materials, that came to Knobel for his employer, and re-ship them down the branch roads to points where they might be needed. On an afternoon in June, of that year, a freight train, with one flat-car laden with lumber for Jones' employer, stopped at the depot of Knobel. This car of lumber was at the head of the train, next to and immediately in rear of the engine and tender. The conductor alighted from the train and went · into the depot building to deliver his bills of lading and transact other necessary business with the station agent. Before this flat-car had been detached from the train and placed upon the side-track, Jones mounted upon it at its rear end. None of the train hands observed him, except a brakeman, who ordered him to get off, as it was against the rules of the company for freight trains to carry persons unconnected with the train. But Jones refused to get down, and the brakeman went to another part of the train to attend to a hot box. The train-men then proceeded to switch off this flat-car on to the side track. This was done by uncoupling the car

and taking it with the locomotive past the switch target, and, when the switch was opened, backing it on the side track. Then, when the locomotive was ,well under way in its backward movement, the pin which held this flat-car to the tender was pulled out, the engine was reversed and returned to the main track, and the car, by the impetus acquired by the parting kick, was sent off in the desired direction. In this case the engine was backing with considerable speed, and great, and perhaps unnecessary, force was used in sending off the detached car; for it rolled on until it collided with another car standing on the side track, and the draw-heads of both cars were stove in. As the engine was passing the switch another brakeman warned Jones to look out, as the car upon which he was riding was about to be set out on the siding. He replied that he knew what he was about and that he was too old a hand at the business to be in any danger. But about the time the collision took place, he endeavored to climb up on top of the pile of lumber and was thrown under the wheels of the car, which passed over him, inflicting injuries from which he died.

His administrator brought this action against the railroad company, alleging that his death was caused by the negligent operation of its trains, and recovered a verdict for $2000.

The proof was that the presence of Jones on the car was in fact unknown to all of the train hands except the two brakemen. Some bystanders, who witnessed the accident, testified that the engineer might have seen Jones if he had looked back; but they were ignorant whether he did look back. The engineer and fireman both swore that they had no reason to suspect that any person was on that car; and that it was impossible, on account of the intervening tender and lumber, to see Jones at the end of the car from their places without leaning over at the side of the cab. It is quite possible that the spectators were deceived into the belief that Jones was visible to the en-

gineer from the fact that both parties were in plain view of themselves.

Upon this evidence the jury were charged, in substance, that although Jones may have been unlawfully upon the car, yet if the engineer in charge had knowledge of his presence, and was guilty of negligence in the transfer of the car from one track to the other, in consequence of which Jones lost his life, the defendant would be liable. And the court refused the following request, and similar ones embodying the same idea :

" The jury are instructed, that a person who has no lawful right to be upon a vehicle, whether a railroad car or other vehicle, and is there without the consent of the carrier or his duly authorized agent, is a trespasser, and cannot recover damages for any injuries happening to him, unless the said injury was caused by wilful and intentional negligence on the part of the carrier, occurring after the latter has had notice of such person's presence on the vehicle.

" If, therefore, the jury find, from the evidence, that the deceased was on the defendant's flat-car, at the time loaded with lumber, without the consent of the conductor of said train, the court tells you that he was there as a trespasser, and you will find for the defendant in this action; unless you further find, from the evidence, that the injury was caused by wilful and intentional negligence or carelessness of the defendant's engineer after he knew deceased was on the said car."

RAILROADS:—
Negligence:
Injury to one
unlawfully on
car.          The first and most material inquiry is, what right had Jones to be on the car, and what corresponding obligation rested upon the company to provide for his safety. For, when it is said that it is the duty of a railway company to operate its trains with care, this is in reference to those who are in a position to complain of its neglect. It cannot be expected to run its freight trains with a constant view to the probability that unauthorized persons may be secreted or lurking about the

trains. Thus, the tramp, who steals a ride, cannot recover damages for a personal injury suffered by him in consequence of defective machinery, or an insecure road-bed, or the negligence of the company's servants; because in these matters the company owes him no duty.

Now, Jones was not a passenger; he was not an employe of the company; he had no sort of connection with the train; no invitation or inducement was extended to him to get on the car. Whatever may have been his motive, we may be sure that it was for his own pleasure or convenience that he acted. He had no right to meddle with the lumber until it was delivered to him by the station agent, and that could only be after the car upon which it was loaded was at rest upon the side track and separated from the train. He had no authority to direct at what point this car should be left, for the train-men take their directions from the conductor, who in such matters receives his directions from the station agent. Consequently he was a mere intruder and trespasser, who had, of his own choice and without the slightest necessity, placed himself in a situation where he was liable to be injured. He was a man thirty-five years old, and presumably of sufficient discretion to understand that he incurred some peril. Moreover, he was twice warned that he had no business there and that it was dangerous. He voluntarily took whatever risks were incident to his situation while the car was in course of being shifted from the main track to the side track. And the servants of the company were not bound to conduct that operation with any special reference to his safety. They had the right to presume that no one was on the car; for no one had any business to be there. And the only duty that the defendant corporation owed him was the negative duty not to injure him wantonly, or wilfully, or by such gross and reckless negligence in the management of the car, after the discovery that he was upon it, as would be equivalent to intentional mischief. *Cooley on Torts,*

*660; 1 Thomps. on Negligence, 448–9, and cases cited; Severy v. Nickerson, 120 Mass., 306; S. C. 21 Am. Rep., 514; Johnson v. B. & M. Railroad; 125 Mass., 75; Morrissey v. R. R., 126 Mass., 380; Railroad Company v. Norton, 24 Pa. St., 465; Beam v. R. R. Co., 49 Ind., 93.*

If the jury found, as they must have found under the directions, that the engineer was aware of the presence of Jones, their verdict was without evidence to rest upon. But even if he knew this fact, and was negligent in handling his engine and this car, it would not follow that the company was liable in this action. For, it could not be foreseen, as a probable consequence, that Jones would be thrown under the wheels by the force of the collision.

The uncontroverted facts of the case show contributory negligence in the plaintiff's intestate. And there is certainly nothing in the circumstances from which a jury could infer that the hurt was intended, or contemplated as a probable result, by any person connected with the train.

The judgment is reversed and the cause remanded for another trial.