SHUMACHER *v.* ST. LOUIS & S. F. R. Co.

*(Circuit Court, W. D. Arkansas. June 8, 1889.)*

1. NEGLIGENCE—GROSS NEGLIGENCE.
   A party is guilty of gross negligence if he fails to exercise the care required of him by the law. This care required by the law is such care as is necessary under the circumstances to secure the protection of the lives, persons, and property of other persons.

2. SAME.
   Gross negligence is the absence of the care necessary under the circumstances to secure protection to life, person, and property. The entire absence of that prudent and proper care necessary to render safe life, person, and property, and the failure to exercise such care, shows a conscious indifference to consequences, which makes a state of case in which there is constructive or legal willfulness.

3. SAME.
   In a case where, as a probable consequence, the danger is very great, the greater the degree of care required. In such a case the law requires the very highest possible care to prevent an injury.

**4.** SAME—WILLFUL ACT.

An act characterized by a high degree of negligence, or, as it is familiarly called, "gross negligence," is the counterpart of a willful act. When the danger is very great, and the care to prevent disaster is very slight, or none at all, the neglect of a party becomes a willful act in law.

**5.** SAME.

The highest duty of man is to protect human life, or the person of a human being. That duty is never performed so as to escape responsibility until all possible care, under the circumstances, has been exercised.

**6.** SAME.

If a conductor in charge of a gravel train was aware of the peril of a party who was in a position of danger, or might by the exercise of ordinary care have discovered it in time to have avoided the injury to the party plaintiff, that he permitted the danger to be created; that he thereafter, and up to the time of the collision, failed to use the means within his power with a proper degree of care consistent with the safety of those on board the train to avoid the infliction of such injury to them as would spring as a probable, reasonable, and natural consequence from the act,—a state of case would be created which would indicate such a degree of indifference to the rights of others as to warrant the characterization of such conduct as recklessness of such a character as to leave no place for the doctrine of contributory negligence in the case.

**7.** SAME—CONTRIBUTORY NEGLIGENCE.

The fact that one has carelessly put himself in a place of danger is never an excuse for another purposely or recklessly injuring him. An act may be legally willful without a direct intent. It may be so willful if reckless.

**8.** NEW TRIAL—EXCESSIVE VERDICT.

A court cannot interfere with a verdict on the ground of excessive damages, unless such damages are so excessively large and disproportionate as to warrant the inference that the jury was swayed by prejudice, preference, partiality, passion, or corruption.

**9.** NEGLIGENCE—PLEADING.

If an injury is charged in a complaint to have been negligently done, a plaintiff may prove any degree of negligence, although it may be such a degree as to make a case of constructive or legal willfulness.

**10.** SAME.

If a pleading is too narrow to cover the proof it can be widened, in a case where all the issues which will be embraced by the amended pleading were presented to the jury at the time of the trial.

**11.** SAME—AMENDMENT.

If neither the actual nature of the case, nor the real issue between the parties as it has been tried, would be changed by an amendment, the same should be permitted in furtherance of justice, even after verdict.

(*Syllabus by the Court.*)

At Law.

This is a suit against defendant for damages, plaintiff claiming in his original complaint that he was injured by the negligence and carelessness of defendant in not providing suitable and proper brakes for defendant's cars; that he was on a gravel train of defendant as an employé; that he was so injured by defendant, while its employés were engaged in switching cars, by reason of defective brakes with which said cars were supplied by defendant. In the amended supplemental complaint plaintiff says the injury to him was caused by the defendant through its agents, who so negligently and improperly managed the said train that the plaintiff was knocked off the same, and the cars of defendant ran over him. Plaintiff says it was the duty of the defendant to make and enforce suitable regulations as to the manner of switching and making up trains, and

regulating the speed thereof, and providing a sufficient number of brake-men to check and control said cars while switching, and at all other times, and to manage its train so as not to 'endanger the lives or limbs of its servants; that the defendant violated its duty to plaintiff in the said particulars, and the same wholly neglected and failed to perform; and that by said negligence of said defendant the plaintiff was run over and injured. The proof shows the wheels of a car ran over the left foot of plaintiff, injuring it so his left leg had to be finally amputated close up to his thigh. The plaintiff claimed $15,000 damages. The jury rendered a verdict in his favor for $8,000 damages. The defendant filed a motion for a new trial containing the following causes:

"Because the verdict is contrary to law; because the verdict is contrary to the evidence; because the verdict is contrary to both law and evidence; because of error of law in refusing to give instructions from one to nine, inclusive, as asked for by defendant; because the court erred in modifying instructions as asked for by the defendant, over the objection of defendant, and by giving the same as modified to the jury; because the court erred in giving instructions numbered from three to eleven, inclusive, as asked for by plaintiff, over the objections of defendant; because the verdict is not supported by the evidence."

*George A. Grace* and *J. P. Byres*, for plaintiff.
*Clayton, Brizzolara & Forrester*, for defendant.

PARKER, J., (*after stating the facts as above.*) How did the employés of the defendant, or, more properly speaking, the conductor, as he was in charge of that train, and responsible for its management, make the switch at the time of the accident? The evidence shows that the engine and four loaded cars, they being loaded with gravel, were stopped on the main track. The engine was detached and run up the road to pass a switch, and when it was run past this switch it was backed and attached to 10 cars loaded with gravel which were standing on the switch. It was then run far enough up a steep grade of the track to pull the cars off the switch and place them on the main track. Then the engine was detached from the 10 cars, and they were let go down a steep grade until the front one of the 10 struck the rear one of the four left on the main track; and this was done with but one brakeman using one brake to check the increasing velocity of these 10 loaded gravel-cars. The witness Kinney says: "The cars came down pretty hard,—pretty fast,—and the further they came the faster they came, and struck pretty hard. I think it struck harder than usual. It was down grade. Was a steep grade. It is harder to hold on a down grade." The brakeman Gifford says: "Grade was steeper than he thought it was. Cars got start of me a little, and when I saw they were going to hit a little too hard I hallooed to the men 'Look out!'" He further says: "*Question.* You say you were going to strike harder than you ought to? *Answer.* Yes, sir; harder than cars ought to strike to be safe on making a coupling." In describing how the switching was done Gifford says: "Pulled ten loaded cars, loaded with gravel, off the switch, took them up a steep grade, cut the engine loose, and let them go down the grade." Again he says: "The grade

was too steep for him to stop the cars." Further he says: "I suppose it would have been of advantage to me if other brakemen had been there." " Q. If there had been enough men you could have held her down so as not to hurt anybody? A. Yes, sir. As a matter of fact there was not enough men to hold her down easy." Other witnesses corroborate Gifford as to the manner of making the switch, the nature of the grade, the number of brakemen on the train at the time, the rapidity with which the 10 cars moved after being detached from the engine, the force with which the cars came together, and how such a result could have been prevented. The conductor in charge of this train knew the nature of that grade. It was his duty to know that one brakeman managing one brake could not control that train of 10 loaded cars. It was the duty of the conductor to take these 10 cars off that switch and attach them to the four on the main track in a prudent and careful manner, having due regard to the safety of the property of the company, and above all to the safety of the lives and persons of the employés of the company, many of whom from this evidence were known by every employé of that company on that train,—from the conductor to the water-monkey,—to be on the open gravel-cars, which, from the testimony in this case, was recognized as a position of danger; and with that knowledge such a switch was made. In the light of this evidence, can a want of care in changing these cars be imputed to the conductor? Did he exercise the care that was necessary under the circumstances? If he did not, as was said by the supreme court in the case of *Railroad Co.* v. *Arms,* 91 U. S. 495, he was guilty of gross negligence. "That this means, after all, the absence of the care that was necessary under the circumstances." Indeed, I think this evidence would raise the presumption of a conscious indifference to consequences on the part of the conductor. It seems to me from the testimony that there was an entire absence of that prudent and proper care which, when there is a failure to exercise it, shows that conscious indifference to consequences which makes a state of case in which there is constructive or legal willfulness. The principle, in short, applicable in a case like this is that the plaintiff was guilty of imprudence in sitting where he did on the car, but that defendant, by exercising the degree of care required of it, could have prevented the injury; that the degree of care required is proportioned to the extent of the danger. If, as a probable consequence, the danger is very great, the greater the degree of care required. In such a case the law requires the very highest possible care to prevent an injury. An act characterized by a high degree of negligence, or, as it is familiarly called, "gross negligence," is the counterpart of a willful act. When the danger is very great, and the care to prevent disaster is very slight, or none at all, the neglect of a party becomes a willful act in law. The highest duty of man is to protect human life, or the person of a human being. That duty is never performed so as to escape responsibility until all possible care, under the circumstances, is exercised. The law says if the management of these cars, after the plaintiff was discovered on one of them in a position of danger in time to have prevented the injury, was characterized by gross and reckless neg-

ligence, it is equivalent to intentional mischief. *Railroad Co.* v. *Ledbetter's Adm'r*, 45 Ark. 246; Cooley, Torts, 810. This striking together of the cars, caused by the negligence or want of proper care on the part of the conductor, was an act which, under the circumstances, considering the proven situation of a number of men on the gravel-cars, would produce the result that was produced as a natural, probable, and ordinary consequence. If the conductor was guilty of such a degree of negligence as naturally led to such a result, in law he is held to have intended the result. This may appropriately be called "legal willfulness." The evidence, to my mind, shows that the switching was done in a careless and reckless manner. Did the conductor know of the dangerous position of plaintiff, or could he have known it by the exercise of such a reasonable degree of diligence as the circumstances required, in time to have prevented the injury? Did he know it, or could he have known it, long enough before the injury to have prevented it by the exercise of reasonable care in making the switch? The evidence of Gifford is that he did. On this subject he states that "Burk told the men they had better ride in the caboose; there was lots of room in there." "*Question.* When did Burk tell them that? *Answer.* While they were running between Tushka Homma and Talihina. *Q.* Did you ever tell these men? *A.* I don't know that I did, personally. He [meaning Shumacher] was on the end of the car when Burk told him. *Q.* Did he get off the end of the car? *A.* No, sir; I don't think he did. *Q.* He remained there? *A.* Yes, sir." By this testimony plaintiff was in this place of danger while they were running between Tushka Homma and Talihina. This was a considerable time before the injury was inflicted, and from the testimony he must have remained there until he was knocked off by the collision. The conductor saw him there. The conductor was about these cars or the caboose all the time. He knew the men were in the habit of riding on the gravel-cars. If he did not actually know that the plaintiff was on the end of the car, he had such good reason to know that he was there, or might be there, as to make it his duty to see whether he was there or not before such a reckless and careless act as switching these cars was done. His knowledge of the position of this plaintiff before the switching made such a state of case as that it became his duty to exercise due care to see if the plaintiff was in a position of danger. From this evidence he either knew of the perilous situation of the plaintiff, or by the exercise of ordinary care might have discovered it, in time to have avoided injuring him. It is apparent to my mind, from the facts, that he failed to use the means in his power with a proper degree of care to prevent injuring plaintiff, or any one else on the cars. This makes a case of constructive or legal intent, or a case where such conduct is equivalent to intentional mischief. *Guenther* v. *Railroad Co.*, 8 S. W. Rep. 375. The facts, in my judgment, show the injury to plaintiff could have been prevented by the use of ordinary care on the part of the conductor after he obtained knowledge of the position of plaintiff on the train, or after and while he had good reason to know his position of danger. He having such good reason to know this fact, it was his duty to

make an effort to know the real truth at the time of the switching. We are to consider that the conductor knew it to be a habit of many, if not all, of these men to ride on the open dirt-cars. This was a position of danger, as shown by all the evidence in this case. This conductor, under the law, could not change the position of these cars under such circumstances as described by the evidence without making some reasonable effort to learn the position of the men at the time the cars were taken from the switch and turned loose on a steep grade without being guilty of such negligence as would make the act willful in law. The act was one of great carelessness. It was an act which naturally, reasonably, and probably would produce just such a result as was produced. It was a result that could have been prevented by the exercise of that reasonable and ordinary care which should have characterized the act of the conductor as a reasonable and prudent man having in charge a very dangerous agency. The negligence of the conductor in this case commenced when the switching commenced in the manner that it did, and it continued until the injury was inflicted. It is claimed that warning was given of the approaching danger. It was, but it was too late. I do not think it can be gathered from any of the evidence that the warning was given until after the cars had been cut loose from the engine, and started down the steep grade, as the witnesses call it. Mr. Kinney says: "This hallooing was when the cars had not much more than started down the grade." Take all the evidence together, and it shows it was after they had started, and gone some distance down the grade, before the hallooing was done. This did not break in on the state of negligence on the part of the conductor that had commenced, then existed, and continued up to the time of the injury of plaintiff.

On a careful review of the evidence in this case, I conclude the place on the car that plaintiff fell from was a position of danger. The conductor was aware of Shumacher's presence on the car, and only a short time before, if not at the very time of the injury, he knew of his presence on the very spot from which he fell, or had good reason to have such knowledge; that any place on the car was a place of danger; that Shumacher was guilty of negligence in being where he was; that the injury to plaintiff could have been prevented by the use of ordinary care on the part of the conductor, who was the man in charge of the train at that time, and who had the control of plaintiff and all others on that train while it was in transit from the gravel-pit to where its load of gravel was discharged; that he failed to exercise this care. This care, under the circumstances, he must exercise. *Sullivan* v. *Railroad Co.*, 10 S. W. Rep. 852. The conductor was aware of the peril of plaintiff, or might, by the exercise of ordinary care, have discovered it in time to have avoided the injury to plaintiff. He permitted the danger to be created. He thereafter, and up to the time of the collision, failed to use the means within his power with a proper degree of care consistent with the safety of those on board the train to avoid the infliction of such injury to them as would spring as a probable and natural consequence from the act. This state of case indicated such a degree of indifference to

the rights of others as to warrant the characterization of such conduct as recklessness of such a character as to leave no place for the doctrine of "contributory negligence" in the case. The fact that one has carelessly put himself in a place of danger is never an excuse for another purposely or recklessly injuring him. Cooley, Torts, 811. An act may be legally willful without a direct intent. It may be so willful if reckless. It seems to me that the facts referred to above, and the legal principles enunciated, entirely justify the court in giving the instructions asked for by the defendant, as modified, and in giving the instruction on its own motion, defining "willfully or intentionally," which is as follows:

"'Willfully or intentionally,' as used in the instructions, means either a specific purpose to do the plaintiff an injury, or a grossly reckless management of the car or cars after plaintiff's position on the car was discovered by defendant's agent, the conductor. To make the management of the car or cars a grossly reckless management the position of plaintiff on the car must have been known to the conductor sufficiently long before the injury to have enabled him, and those under him in the management of the train, to have prevented the injury. If such management was grossly reckless, after plaintiff's position was discovered in time to have prevented the injury, such recklessness is equivalent to willful or intentional mischief."

The court, in the light of the evidence, was justified in giving such instructions as were asked by plaintiff on the subject of the injury being produced by an act that was in law willful. Of the other instructions in the case I think the defendant has no right to complain. Those given at the request of its attorneys are more favorable than I think the facts warrant, but it cannot complain on this ground. I was at one time inclined to the opinion that the damages were excessive. Whether they may be or not, before a court can interfere with a verdict on that ground the same must be so excessively large and disproportionate as to warrant the inference that the jury were swayed by prejudice, preference, partiality, passion, or corruption. *St. Martin* v. *Desnoyer*, 61 Amer. Dec. 494; *Schlencker* v. *Risley*, 38 Amer. Dec. 100, note, 106. It is complained by defendant that the theory of the case presented by the instructions, that the act which injured the plaintiff was legally willful, was not alleged in the complaint. It is charged in the complaint to have been a negligent act. I do not think it necessary to specifically allege the degree of negligence. When it is charged to have been a negligent act the defendant must take notice that the plaintiff can rely upon his right to prove negligence of any degree. It is now well settled, as I believe, by the English cases, and generally by the American courts, that a plaintiff may recover, notwithstanding his own negligence exposed him to the risk of injury, if the defendant, after becoming actually aware of the plaintiff's danger, or if, under the circumstances, it was defendant's duty to know it, failed to use ordinary care to avoid injuring him. Such a case is one of legal willful injury. Shear. & R. Neg. 36.

I think all the facts out of which spring the true legal aspects of this case are alleged; but, if not, after all the evidence has been heard, the case submitted to the jury, a verdict rendered, and the right result, as

shown by the law and the evidence, has been reached, in view of the liberal doctrine of amendments which in the interest of justice now prevails in the courts, I think a court would hardly be justified in setting aside a verdict on that ground. The purpose of all trials is to secure a just result,—to arrive at an honest finding. To do this the federal courts put aside all the mere technicalities of the law. They are brushed out of the way as so many cobwebs. If the pleading is too narrow to cover the proof, it can be widened, in a case where all the issues which will be embraced by the amended pleading were presented to the jury. Proof was offered on them, and the law covering and defining these issues was fully presented. In my judgment neither the actual nature of the case nor the real issue between the parties, as it has been tried, would be changed by an amendment. In such a case, if necessary, it ought to be made, even after verdict, in furtherance of justice. *Bamberger* v. *Terry*, 103 U. S. 40. After a careful consideration of the case I am brought to the conclusion that substantial justice has been done the parties; that the real merits of the controversy have been reached, and upon these grounds the verdict should stand, and judgment should be entered on same. Motion for a new trial will be overruled.