EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JUAN TELMAÍN ESCALERA, JOSÉ DE JESÚS GUADALUPE y AMALIO RIVERA MOJICA, acusados y apelantes los dos primeros.

No. 4967.—*Sometido:* Abril 6, 1933. *Resuelto:* Julio 19, 1933.

448

*W. L. Newsom,* abogado de los apelantes; *José R. Quiñones, Fiscal General* y *R. A. Gómez, Fiscal del Supremo,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR CÓRDOVA DÁVILA, emitió la opinión del tribunal.

Juan Telmaín Escalera, José de Jesús Guadalupe y Amalio Rivera Mojica fueron condenados a tres meses de cárcel por la Corte Municipal de Humacao. Se les acusó de haber infringido el artículo 328 del Código Penal. En apelación, Amalio Rivera Mojica fué absuelto, y los otros dos acusados declarados culpables por la Corte de Distrito de Humacao y condenados a $100 de multa cada uno o en defecto de pago, a un día de cárcel por cada dólar que dejasen de satisfacer, no pudiendo exceder la prisión de noventa días. En el recurso de apelación interpuesto por los acusados para ante esta corte se señalan tres errores. Los dos primeros se basan en haber declarado la corte inferior sin lugar las excepciones perentorias presentadas por los acusados y en haber desestimado una moción solicitando la absolución perentoria, después de practicada la prueba del Pueblo. Las excepciones perentorias presentadas por los acusados en la corte inferior son las siguientes:

"1.—Que la acusación no contiene una exposición de los actos constitutivos del delito alegado en lenguaje claro y conciso y corriente y no está redactada en tal modo que cualquier persona de inteligencia común pueda entenderla, y por lo tanto no se ajusta en su fondo a los requisitos establecidos en el artículo 71 del Código de Procedimiento Criminal.

"2.—Que dicha acusación no se ajusta en su fondo a los requisitos establecidos en los artículos 72 y 73 del Código de Enjuiciamiento Criminal.

"3.—Que en dicha acusación se imputa más de un delito, toda vez que se alega que los acusados voluntariamente chocaron la re-

ferida máquina con el automóvil descrito en la acusación, que es un delito no comprendido en el referido artículo 328 del Código Penal.

"4.—Que en dicha acusación los hechos alegados no constituyen infracción alguna del referido artículo 328 del Código Penal, porque no se alega que los acusados estaban encargados del todo o en parte del deber de despachar o dirigir los movimientos de la referida locomotora, ni tampoco se alega que dichos acusados son culpables de 'gross negligence or carelessness'."

Los acusados argumentan conjuntamente todas estas excepciones que se refieren al primer error y que están íntimamente relacionadas con el segundo. Se trata en este caso de una denuncia presentada por un agente de la Policía Insular en la cual se dice que:

" . . . en 3 de enero de 1932 (a las 3 p. m.) y en la carretera No. 28, Sección Las Piedras, P. R., dentro del Distrito Judicial Municipal de Humacao, P. R., que a la vez forma parte del Distrito Judicial del mismo nombre, allí y entonces, los acusados Juan Telmaín Escalera, Amalio Rivera Mojica y José de Jesús Guadalupe, mientras trabajaban como maquinista, chuchero y fogonero, respectivamente, de la máquina de tracción número 5, propiedad de la Central Juncos, debido a la poca prudencia y circunspección que tuvieron al cruzar un desvío que atraviesa la carretera insular número 28 y en el cual no había guardabarreras, voluntariamente chocaron la referida máquina con el automóvil número P-2452 guíado por el *chauffeur* Prudencio Sánchez Vélez que en ese momento caminaba por la carretera con dirección de Naguabo para Juncos corriendo a moderada velocidad, tocando bocina y por su correspondiente derecha, resultando de dicho choque el automóvil completamente destrozado y los pasajeros José Texidor Just con heridas y contusiones de alguna gravedad, de lo que fué atendido en el Hospital Municipal de Caguas por el Dr. Jenaro Barreras, y los pasajeros Zoilo Dueño, Antonio López Quiñones y José Jiménez Matta con heridas y contusiones de carácter leve."

Arguyen los acusados que los hechos no aparecen alegados en lenguaje conciso y corriente de tal modo que cualquier persona de inteligencia común pueda entenderlos conforme a lo dispuesto en el artículo 71 del Código de Enjuiciamiento Criminal.

El artículo 328 del Código Penal, tal y como fué enmendado en 1916, dice así:

"Todo conductor, maquinista, guardafreno, guardaaguja, u otra persona encargada del todo o en parte de cualquier vagón, locomotora, tren de ferrocarril, automóvil o embarcación y cualquier despachador de trenes (train dispatcher), telegrafista, jefe de estación o cualquier otra persona encargada del todo o en parte del deber de despachar o dirigir los movimientos de dicho vagón, locomotora, tren de ferrocarril, automóvil o embarcación, que por imprudencia temeraria o descuido, lo dejase o hiciese chocar con otro vagón, locomotora, automóvil o embarcación, tren o cualquiera otro objeto o cosa, ocasionando de este modo la muerte de una persona, incurrirá en pena de presidio por un término máximo de cinco años.

"Si como consecuencia del choque resultase daño para alguna persona, dicho conductor, maquinista, guardafreno, guardaaguja, u otra persona, incurrirá en pena de cárcel por un término máximo de dos años, o multa máxima de mil dollars, o en ambas penas a discreción de la Corte."

Este artículo originalmente castigaba con pena de presidio a todo conductor, maquinista, etc., u otra persona encargada del todo o en parte de cualquier vagón, etc., que voluntariamente o por descuido lo dejare o hiciese chocar con otro vagón, locomotora, tren u otro objeto cualquiera ocasionando de este modo la muerte de una persona.

En 1908 las palabras "voluntariamente o por descuido" fueron sustituídas por las palabras "impericia, negligencia o descuido", y en 1916 el mismo artículo quedó enmendado, siendo una de dichas enmiendas sustituir las palabras "impericia, negligencia o descuido" por las palabras "imprudencia temeraria o descuido."

Arguyen los acusados que en este caso la denuncia está enteramente huérfana de una alegación de imprudencia temeraria o descuido, que es sin duda alguna un requisito indispensable para que se pueda imputar una violación del artículo 328 del Código Penal.

De acuerdo con este artículo el delito puede cometerse por imprudencia temeraria o por descuido. En el caso de *El*

*Pueblo* v. *del Valle,* 32 D.P.R. 155, esta corte dijo que el artículo, en la forma en que ha sido enmendado, establece dos formas de comisión del delito, una por imprudencia temeraria y otra por descuido, y que cualquiera de ellas que se impute es bastante.

En la presente denuncia se alega que debido a la poca prudencia y circunspección que tuvieron los acusados al cruzar un desvío, voluntariamente chocaron la máquina con el automóvil guiado por Prudencio Sánchez Vélez. Entendemos que dentro de esta alegación puede probarse la imprudencia temeraria o descuido de que habla el artículo 328 del Código Penal. Para saber hasta qué grado fué poca la prudencia y la circunspección, es necesario conocer los hechos. Todo depende de la prueba. La prudencia y la circunspección pueden ser tan pocas y ejercitadas en tan mínimo grado que constituyan imprudencia temeraria. La alegación es bastante. Toca a la corte apreciar la evidencia y decidir si dentro de esta alegación ha habido o no imprudencia temeraria o descuido, o si no se ha probado ninguna de las modalidades del delito.

En la Enciclopedia Jurídica Española, tomo 18, pág. 517, se define así la imprudencia temeraria: ''Falta de previsión de los riesgos más naturales e inmediatos de los propios actos, capaces de producir daños a las personas y en las cosas. La imprudencia temeraria, cuando estos daños llegan a verificarse, hace incurrir en responsabilidad criminal; pues aunque falte en la producción del evento dañoso la malicia o estado de espíritu delictivo del agente, el temerario imprudente revela ser un sujeto peligroso, de temibilidad notoria, en quien, mediante la pena, se hace necesaria la reeducación de la atención y de las facultades asociativas, orígenes ambas de su defecto psico-físico.''

La jurisprudencia americana se ajusta a esta definición. La falta de previsión no implica necesariamente su ausencia completa y absoluta, sino aquella falta de la previsión requerida dentro de las circunstancias.

■ Se hace también la alegación de que los acusados chocaron voluntariamente la máquina con el automóvil. En un acto negligentemente ejecutado no interviene como una cuestión de hecho la voluntad; pero si el cuidado ejercitado se reduce a un grado mínimo o si la negligencia es de tal naturaleza que adquiere el carácter de temeraria, entonces, desde el punto de vista legal, el acto surte el mismo efecto que si hubiese sido voluntario. Un acto producido por la voluntad tiene carácter positivo, mientras que un acto que surge de la negligencia tiene carácter negativo. Ambas cosas son incompatibles; pero puede decirse, sin reñir con la lógica y girando en el campo de la compatibilidad, que una persona que actúa negligente y descuidadamente en el desempeño de funciones que requieren previsión y prudencia para evitar posibles daños a terceras personas, al extremo de incurrir en negligencia crasa o imprudencia temeraria, está ejecutando voluntariamente un acto peligroso y censurable, a sabiendas de las consecuencias que puedan resultar de su imprudencia e imprevisión. En la denuncia se alega que debido a la poca prudencia y circunspección, los acusados voluntariamente chocaron la máquina con el automóvil. Se está diciendo que esta prudencia y circunspección fueron tan pocas que produjeron un choque ocasionado por un acto de imprudencia voluntariamente ejecutado.

En el caso de *Helme* v. *Great Western Milling Co.,* 185 Pac. 512, resuelto por el Segundo Distrito de la Corte de Apelaciones, División Segunda, de California, se define la negligencia crasa como sigue:

"Negligencia crasa es la falta completa de cuidado, o el ejercicio de un grado tan pequeño de cuidado que justifique la creencia de que hay una completa indiferencia con respecto al interés y bienestar de los demás. Es aquella completa falta de cuidado que origina una presunción de indiferencia consciente hacia las consecuencias. Implica una total despreocupación de las consecuencias, sin hacer ningún esfuerzo para evitarlas . . . Mientras en un caso de negligencia crasa varios términos han sido usados para expresar el estado mental del actor, la idea que se trata de demostrar es que el

acto ejecutado u omitido fué omitido o ejecutado voluntaria e intencionalmente. 20 R. C. L. 23. En Astin v. Chicago, etc., Co., supra, la Corte Suprema de Wisconsin dice que la negligencia crasa no está caracterizada por inadvertencia, sino 'por una ausencia de cualquier cuidado de parte de una persona que tenga un deber que ejecutar para evitar ocasionarle daño a los derechos personales o de propiedad de otro, actuando descuidada o maliciosamente, o dejando de evitar, por omisión, la realización del daño y poniendo de relieve una tan completa despreocupación de las consecuencias que sugiere algún grado de intención para causar tal daño.''

En *Shumacher* v. *St. Louis & S. F. R. Co.,* 39 Fed. 174, 177, se define lo que constituye falta de cuidado y se dice con respecto a la negligencia crasa:

''. . . Un acto caracterizado por un alto grado de negligencia o como familiarmente se dice 'negligencia crasa', equivale a un acto voluntario. Cuando el peligro es muy grande y el cuidado para prevenir el desastre muy pequeño, o ninguno en absoluto, la negligencia de una parte viene a ser un acto voluntario como una cuestión de derecho. El deber más grande de un hombre es proteger la vida humana o la persona de un ser humano. Nunca se ejecuta este deber para escapar responsabilidad hasta que se ha ejercitado todo el cuidado posible dentro de las circunstancias. La ley dice si el manejo de estos carros, después que el demandante fué descubierto en uno de ellos en una posición de peligro en tiempo oportuno para haber prevenido el daño, fué caracterizado como negligencia crasa, esto es equivalente a un daño intencional.''

Alegan los acusados que la denuncia no contiene ninguna alegación específica en el sentido de que los acusados estaban encargados en todo o en parte de despachar o dirigir los movimientos de la máquina. En la denuncia se alega que los acusados, mientras trabajaban como maquinista, chuchero y fogonero de la máquina de tracción No. 5, chocaron voluntariamente, al cruzar el desvío, con el automóvil. Esta alegación, por lo menos en lo que se refiere al maquinista, es bastante para sostener la acusación. Es el maquinista quien gobierna y dirige la máquina. Una persona que trabaja como maquinista y que desempeña las funciones propias y usuales de su ocupación, está gobernando y dirigiendo el movimiento

de la máquina donde trabaja. No ocurre así con el fogonero. De sus funciones no se deduce que tenga alguna intervención en el gobierno o dirección de la máquina, y en la denuncia no hay ninguna alegación que pueda servir de base para determinar su responsabilidad dentro de los preceptos del artículo 328 del Código Penal.

■ Conviene tener en cuenta que la denuncia ha sido presentada por un agente de la Policía Insular y no por un fiscal. Este tribunal ha decidido en repetidas decisiones que no se exige la misma precisión en las denuncias que se presentan a las cortes inferiores por *misdemeanor* que en las acusaciones formuladas en las cortes de distrito por *felony*. *Pueblo* v. *Cordero,* 27 D.P.R. 329; *Pueblo* v. *Aranda,* 12 D. P.R. 313; *Pueblo* v. *Bonilla,* 13 D.P.R. 41; *Pueblo* v. *Fontana,* 16 D.P.R. 656; *Pueblo* v. *Muñoz,* 22 D.P.R. 383; *Pueblo* v. *Ferrer,* 43 D.P.R. 987.

La denuncia tal y como está redactada no aduce hechos suficientes para constituir un delito contra el fogonero y contra el chuchero, que fué absuelto por la corte de distrito. En cuanto al maquinista, si las alegaciones de la denuncia resultan sostenidas por la prueba, la sentencia de la corte inferior debe ser confirmada.

■ Alegan los apelantes que la teoría original del artículo 328 fué incluir solamente vehículos que conduzcan pasajeros y que debe alegarse en la denuncia la clase de vehículo, que debe ser uno de los enumerados en dicho artículo. Añaden los acusados que en este caso se menciona una máquina de tracción y que esta máquina no es uno de los vehículos que menciona el artículo 328 ni es tampoco una máquina que se usa para la conducción de pasajeros. No estamos conformes con la interpretación que dan los apelantes al referido artículo. De acuerdo con el mismo, cuando por imprudencia temeraria o descuido uno de los vehículos mencionados se dejase o hiciese chocar con otro vagón, etc., la persona encargada en todo o en parte del deber de despachar o dirigir los movimientos de dicho vehículo incurrirá en responsabi-

lidad criminal. En este caso se alega en la denuncia que como consecuencia del choque el automóvil resultó completamente destrozado y los pasajeros heridos, de alguna gravedad unos y levemente otros. El propósito de la ley no es proteger exclusivamente a los pasajeros que viajan en el vehículo que produce el choque, sino también a los que viajan en el vehículo objeto de dicho choque, y a cualquier otra persona que pierda la vida o sufra daños como consecuencia del mismo. Los apelantes sostienen que el artículo 328 se refiere únicamente a trenes de pasajeros o a aquellos vehículos que conducen pasajeros. La ley habla de vagón, locomotora, tren de ferrocarril, automóvil, embarcación, sin especificar que ellos sean de pasajeros, y no parece razonable darle una interpretación tan restringida a un estatuto aprobado con el propósito de castigar actos de imprudencia temeraria o descuido que ocasionen la muerte o produzcan daño personal.

■■ Alega por último la defensa que la corte inferior erró en la apreciación de la prueba. El accidente ocurrió en un desvío conocido con el nombre de "Sanabria", que cruza la carretera No. 28 entre Naguabo y Juncos. Desde la Central Juncos a la Central Pasto Viejo hay una vía general que, al comenzar, partiendo de la Central Juncos, se encuentra a relativa distancia de la carretera, a la cual se acerca gradualmente hasta correr en líneas paralelas. El desvío comienza como a 55 metros de dicha carretera, la cual atraviesa, internándose en un callejón que, a juzgar por el plano que presentó como prueba la defensa, tiene una extensión de más de 200 metros de longitud. El maquinista y acusado Juan Telmaín Escalera, declara que salió con su máquina de la Central Juncos y penetró en el desvío Sanabria, cruzando la carretera, donde dejó a Amalio Rivera para que hiciera las señales con un banderín colorado cuando el testigo tocase el pito. La máquina arrastraba un vagón, destinado a carbón, que los testigos designan con el nombre inglés de "tender". Según declara el acusado, tomó el desvío y cruzó la carretera

para coger unos vagones, internándose en el callejón como unos setenta y cinco o cien metros hasta cerca de una grúa, donde pegó los vagones a la máquina. Desde allí contramarchó para llegar al punto de partida. Al volver hacia atrás y cruzar nuevamente la carretera fué que ocurrió el accidente. Cuando tomó el desvío y atravesó la carretera para coger los vagones, la máquina iba al frente y el ''tender'' o carbonera detrás. Cuando contramarchó, después de pegar los vagones, la máquina quedó colocada entre los vagones y el ''tender'', de espaldas a la carretera. Sigue declarando el testigo que cuando sintió el macetazo que sacó el ''tender'' como a tres pies de la vía, fué que vió el carro con el cual se produjo el choque. Manifiesta el acusado que tocó el pito cuatro veces para avisarle a Amalio Rivera que iba a pasar; que Amalio estaba haciendo señales; que en su marcha hacia atrás no podía mirar más que el centro de la vía, porque allí la máquina sigue una curva; que cuando Amalio sintió el pito lo llamó, dándole paso en la carretera; que tocó el pito como a quince metros del paso a nivel; que no le mostró la bandera al policía porque no lo exigió.

Hemos examinado cuidadosamente el testimonio de este testigo, por tratarse de la persona que guiaba la máquina. Según declara el ingeniero y testigo de la defensa, Rafael Delgado Márquez, y demuestra el plano admitido como prueba, la carretera es completamente recta. Una persona colocada en el paso a nivel puede ver a larga distancia cualquier carro que se aproxima. El accidente ocurrió en las horas del día, como a las tres de la tarde. Si Amalio Rivera, como dice el maquinista, quedó colocado en la carretera y prestó atención a su cometido, tuvo que ver necesariamente el carro que se aproximaba. El maquinista declara que tocó el pito a quince metros de distancia del paso a nivel. Por despacio que caminara la locomtora esta distancia es excesivamente corta para dar aviso de la aproximación de un tren. Este aviso debe ser oportunamente dado para que pueda surtir sus efectos y evitar cualquier accidente. Hay que

tener en cuenta que según la prueba había cañas a uno y otro lado de la vía al llegar a la carretera, que estas cañas estaban de corte y que la locomotora tenía que cruzarlas al aproximarse a la carretera. No se ha probado que Amalio Rivera hiciera señal alguna. Este testigo no fué llamado a declarar por la defensa, a pesar de que su testimonio tenía una gran importancia, contentándose con la declaración del maquinista. Se produjo la declaración de Pedro Roig, encargado del ferrocarril de la demandada, para desacreditar el testimonio del *chauffeur* Prudencio Sánchez Vélez, que guiaba el carro contra el cual se produjo el choque. Este testigo declara que a raíz del accidente preguntó al *chauffeur* del carro si había visto el hombre que estaba haciendo señales y que éste contestó que "efectivamente estaba un hombre con un banderín rojo en la mano, pero que él, creyendo que era un pasajero que lo mandaba parar, no le hizo caso, cuando de momento se encontró con la máquina, y por el impulso que traía el carro no le fué posible aguantarlo." El *chauffeur* Prudencio Sánchez declaró que no habló con Pedro Roig y negó las manifestaciones que se le atribuyen. El fiscal llama la atención hacia el testimonio del policía José R. Betancourt, quien declaró que preguntó a los acusados, a raíz del accidente, si tenían una bandera roja, contestándole: "No la tenemos, pero las máquinas todas usan banderas." Se olvida el fiscal de que esta parte de la declaración del policía Betancourt fué eliminada a petición del abogado de la defensa, quien entonces la consideró inmaterial, y que no podemos, por lo tanto, tomarla en consideración. Este testimonio, sin embargo, es innecesario. La corte inferior, al dictar su sentencia de culpabilidad, demuestra que no dió crédito a la declaración del acusado Juan Telmaín Escalera y nosotros creemos que no estuvo desacertada en su conclusión.

Ha quedado demostrado por la prueba de ambas partes que la máquina caminaba de espaldas a la carretera cuando ocurrió el accidente. El maquinista ha debido proceder con cautela, y tomar las precauciones requeridas en estos casos

para evitar accidentes. En el caso de *Carreño* v. *Rusell & Co.*, 32 D.P.R. 269, esta corte dijo lo siguiente:

"Un examen de los autos revela que el *chauffeur* de la demandante no fué en verdad todo lo diligente que debió, pero revela también una negligencia crasa por parte de la demandada al entrar en el paso a nivel manejando el maquinista de espaldas a la carretera sin colocar las cadenas existentes o ya que no se colocaban, sin cerciorarse de si en ese momento atravesaba o no alguna persona, animal o máquina."

Copiamos del *syllabus* aprobado por la Corte Suprema de Minnesota en el caso de *Klotz* v. *Winona & St. R. R. Co.*, 71 N. W. 257:

"Cuando un tren y su máquina son empujados hacia atrás por sobre un cruce de una carretera, la compañía ferroviaria debe adoptar precauciones extraordinarias, a fin de no lesionar a las personas que legalmente caminen por la vía; y esta regla es especialmente aplicable cuando el cruce se usa poco frecuentemente, y a horas irregulares, como un desvío."

Cita la Corte Suprema de Minnesota en dicho caso la obra de Lawson "Rights, Remedies and Practice at Law", tomo tercero, sección 1187, donde se sienta la regla de que "cuando un tren está marchando hacia atrás, o vagones son empujados por una locomotora, deben tomarse precauciones extraordinarias a fin de evitar accidentes en los cruces", y añade:

"Citamos estas autoridades como demostrativas de hasta qué punto algunos tribunales eminentes han ido al exigir de las compañías ferroviarias un sumo grado de diligencia y de cuidado mientras dan contramarcha a sus máquinas y vagones por cruces de carreteras en ciudades o villas populosas. En 'Elliot on Railroads' (tomo 3, Sec. 1162) se dice que hay muchos casos en que sólo cabe una inferencia razonable, y la corte puede declarar, como cuestión de ley, que constituye negligencia hacer caminar hacia atrás a un tren en una ciudad populosa, por un cruce donde sea probable que haya gente, sin dar aviso o adoptar otras precauciones; pero él cree que es ir muy lejos decir que dar contramarcha a un tren es negligencia *per se* bajo todas las circunstancias, y que no es negligencia si se toman las precauciones adecuadas; siendo una cuestión de hecho para el

jurado la de si se han tomado tales precauciones por la compañía, y de si usó el cuidado razonable bajo las circunstancias.''

En el caso de *Bowles* v. *Chesapeake & O. R. Co.*, 57 S. E. 131, 132, la Corte Suprema de Apelaciones de West Virginia se expresó en los siguientes términos:

''Cuando un tren empuja vagones sobre una vía pública, de noche, ¿no se requiere diligencia? Es mucho más peligroso que cuando la máquina va delante. No nos sentimos inclinados a decir que el aviso estatutario mediante campana o pito sería adecuado cuando se trata de un tren que está dando contramarcha a través de un cruce. Eso es para un tren que lleva la locomotora en la delantera. Entonces el aviso está en la primera pieza que se aproxima, mientras que, cuando el tren camina hacia atrás, es muy distinto. La campana o pito distante ofrecería muy poca seguridad. En Wood on Railroads, sección 1517, se dice: 'No es necesariamente negligencia de parte de una compañía ferroviaria dar contramarcha o desviar sus vehículos en un cruce con la carretera, ni hacer *flying switches* allí. Tiene perfecto derecho a hacer tal uso de esa parte de la vía, siempre que se adopten las precauciones adecuadas para la seguridad de las personas que transiten por el cruce. Pero como materia de conocimiento común, esa práctica es peculiarmente peligrosa, y crea, por tanto, un deber en la compañía de ejercer un cuidado extraordinario. Debe haber abundante aviso, no sólo mediante las señales acostumbradas de campana y pito, sino que debe haber un abanderado cerca de la vía o un vigilante en el vagón más próximo para avisar a los viandantes que estén cerca. En éste, como en otros casos, la medida exacta del deber de la compañía, y la cuestión respecto a si ha sido o no cumplido, incumben al jurado, si bien cuando se hace un *flying switch* en un cruce, sin hacer notificación alguna, ni colocar un guardián o abanderado que dé aviso, puede resolverse como cuestión de ley que la compañía fué negligente.' En Elliot on Railroads, sec. 1162, se dice que con frecuencia se ha resuelto que hacer que un tren cámine hacia atrás por un cruce sin dar aviso ni mirar, es negligencia *per se;* que ésa es. una proposición correcta en muchos casos, pero no en todos. Sin embargo, admite que, a menos que se tomen precauciones adecuadas, constituye negligencia, y si han sido o no adoptadas es cuestión que el jurado debe determinar. Es ésta una materia muy importante para la seguridad del público, para la preservación de la vida humana, con la cual no debe compararse el aumento en el costo del cuidado que

ha de observar la compañía. La precaución debe ser razonable y adecuada en cada caso en particular. El caso de Vance v. Railway, 53 W. Va. 338, 44 S. E. 461, sostiene este criterio."

En las decisiones anteriormente citadas se habla de las precauciones que deben adoptarse por las compañías ferroviarias al dar contramarcha o desviar sus vehículos en un cruce con la carretera. Esta jurisprudencia demuestra que debe ejercitarse un cuidado extraordinario. No hay duda de que estas maniobras son en extremo peligrosas y de que tanto la compañía ferroviaria, dueña del vehículo y sus vías, como las personas mencionadas en el artículo 328, están obligadas a adoptar las precauciones debidas para evitar accidentes. Si el conductor, maquinista, guardafrenos, guardaagujas u otra persona encargada del todo o en parte del vehículo, sin adoptar las precauciones que la prudencia aconseja, deja chocar dicho vehículo con otro vehículo o cualquier otro objeto o cosa, por imprudencia temeraria o por descuido, esta persona que de este modo actúa incurre en responsabilidad criminal de acuerdo con el artículo 328 del Código Penal que expresamente así lo determina.

Se hace hincapié por la defensa en la declaración de José Texidor, testigo de El Pueblo, que viajaba en el automóvil que chocó con la locomotora. El *chauffeur* Prudencio Sánchez declara que vió la máquina por primera vez cuando salió de la pieza de caña; que todo fué cuestión de momento; que la máquina no se podía ver porque las cañas cubrían uno y otro lado, y que cuando la vió, usó el freno de momento "para evitar el peligro, pero ya la máquina había ocupado el sitio." El testigo José Texidor declara que vió la máquina por primera vez en el momento que salió; que transcurrieron algunos segundos; que fué una cosa de momento. Luego, a preguntas de la defensa, este testigo dice que cuando vió por primera vez la máquina estaba a una distancia de 25 ó 30 pies; que el *chauffeur* aplicó los frenos como a 25 pies. Según la prueba el automóvil caminaba a una velocidad de veinticinco millas por hora. Arguye la defensa que si el

automóvil caminaba a esta velocidad, pudo pararse no a una distancia de veinticinco o treinta pies, sino de cinco o diez pies y entiende que del testimonio de Texidor se deduce que el *chauffeur* caminaba a una gran velocidad y que insistió en cruzar la carretera sin tratar de enfrenar el automóvil, o que, de ser cierto que dicho automóvil caminaba a veinticinco millas por hora no pudieron pararlo porque los frenos estaban malos.

A nuestro juicio estos hechos, en la forma en que han sido expuestos, no relevan de responsabilidad al maquinista, si los hechos alegados en la denuncia han sido probados. La sentencia dictada por la corte inferior demuestra que juzgó probados los referidos hechos. Consideramos acertada la apreciación de la prueba y opinamos que *debe confirmarse la sentencia apelada en lo que se refiere al acusado Juan Telmaín Escalera* y declararse absuelto al fogonero José de Jesús Guadalupe.

Los Jueces Asociados Señores Wolf y Aldrey disintieron.*